# Hugh S. Walker *v.* Harry L. Randal, Appellant.

*Brokers—Real estate—Commissions—Evidence—Admissibility.*

In an action to recover commissions earned in the sale of real estate, the case is for the jury where the issue is one of fact as to whether the plaintiff had secured a purchaser, or whether the property had been sold through another broker. In such case, evidence that the defendant had paid another broker a commission, is immaterial, and, therefore, inadmissible.

Where a broker is duly authorized to sell property by a private sale and has commenced negotiations with the purchaser, the owner cannot, while such negotiations are pending, take it in his own hands and complete it, either at or below the price first limited, and then refuse to pay the commission.

If the terms of employment merely require the broker to find or introduce a purchaser within a certain time, he is legally entitled to remuneration if he induces the person to begin negotiations with his employer before the expiration of the period named, even though such negotiations are not consumated until after the time limit is reached.

Argued December 3, 1924. Appeal, No. 67, Oct. T., 1924, by defendant, from judgment of C. P. Montgomery County, Nov. T., 1922, No. 108, on verdict for plaintiff in the case of Hugh S. Walker v. Harry L. Randal. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for commissions in the sale of real estate. Before WILLIAMS, J.

The facts are stated in the following opinion of the court below:

Sur motion for new trial and judgment non obstante veredicto.

The plaintiff, a licensed real estate broker of the City and County of Philadelphia, sued the defendant, a resident of this county, for $2,500, the amount of an ordinary 2½% commission on $100,000, the price for which the defendant had sold his property situate at Number 1913 Walnut Street, Philadelphia, to one Michael DeMay.

The defendant denied that DeMay had been secured as a purchaser by the plaintiff and claimed that, instead, the premises had been sold by Thomas A. Redding & Son, real estate brokers of the said City of Philadelphia.

The jury having rendered a verdict for the full amount asked by the plaintiff, the defendant has assigned, in support of his motion for a new trial, fourteen (14) reasons. Since it is hardly likely that each of the reasons is compelling and it is certain that all of them are not of equal weight, attention will be directed only to those which, at the oral argument were and, by written brief are most pressed by the learned counsel for the defendant.

The eighth reason is that the trial judge erred in not permitting the defendant to say that he had paid a commission to Mr. Redding.

It is urged that, under the circumstances of this case, the court should have permitted the defendant to answer the question as to the payment of a commission to Red-

ding, not for the purpose of disputing the right of the plaintiff to a commission but because it was relevant to prove that the defendant had no intention of saving himself from the payment of a commission.

If the latter were the real purpose of the inquiry, it was not so stated at the time of the asking of the question. The trial judge was not given the benefit, before ruling, of this, it may be, rather unique point of view on the part of counsel for the defendant. In fact, no purpose was stated for the proving of the evidence excluded.

The relevancy of evidence does not depend upon the conclusiveness of the testimony to establish the particular fact offered to be proven. On the contrary, it hinges upon the legitimate tendency of the testimony to establish the material fact, or facts, really in controversy. It is that the quality of evidence which makes it properly applicable in determining the truth or falsity of the matters in issue between the parties to the suit: Interstate Commerce Commission v. Baird, 194 U. S. 44, (1903), DAY, J.

Tried by this standard, the evidence offered fell far short of relevancy, for it was totally inapplicable to a proper determination of the truth or falsity of the main matter controverted, namely, whether the services of the plaintiff had been the procuring cause of the sale.

The chief issue in the case was whether the plaintiff was entitled to recover his commission from the defendant. It was not whether the latter was seeking to avoid the payment of a commission to anyone. If the plaintiff was entitled to recover, he deserved a verdict irrespective of the question as to whether the defendant was or was not trying to get out of paying what was due. The right of the plaintiff to recover was not affected one way or the other by the good or evil intentions of the defendant. The plaintiff could not have established his right to a verdict for a commission which he had not earned by showing that the defendant was unwilling to pay a commission even if earned and, conversely, the defendant

could not defeat the recovery by the plaintiff of a verdict for work actually done by proving that he was not disposed to refuse to pay for services rendered. No matter how unwilling the defendant might have been to pay a commission to the agent to whom it was due, that fact would not have helped the plaintiff establish his right to an unearned commission and, likewise, the mere fact that the defendant was willing to pay a commission which he believed to have been earned could not assist him in defeating a claim for services which, in spite of his belief, the jury should find had been the efficient cause of sale.

The testimony offered was properly excluded, because the admission of the tendered testimony would have been to the prejudice of the case of the plaintiff. Whatever may have been the purpose underlying the offer, the jury might naturally have drawn from the testimony the inference that the rendition of a verdict in favor of the plaintiff would be imposing a hardship upon the defendant in that, in effect, such a verdict would be compelling the defendant to pay a second commission: Warme v. Johnston, appellant, 48 Pa. Superior Ct. 98, (1911), RICE, P. J., pages 99, 100 and 106. See, also, in this connection, Broadhead v. Pullman Ventilator Co., appellant, 29 Pa. Superior Ct. 19, (1905), RICE, P. J., where it was held, page 28, that, in an action by an agent against his principal to recover commissions on an order alleged to have been secured by him, when the plaintiff makes out a prima facie case and the defendant introduces evidence tending to show that another agent secured the order, evidence that such other agent has been paid for securing the order is immaterial and, hence, should be rejected.

If it were necessary to add anything to the foregoing, it might be stated that the offered testimony was too remote in time from the mooted occurrence. The excluded testimony related solely to an act of the defend-

ant done long after the conclusion of the services rendered by the plaintiff.

The ninth, eleventh, twelfth, thirteenth and fourteenth reasons allege error in the charge.

The ninth has to do with that part of the charge wherein reference was made to an unresponsive and uncalled for remark of the defendant, made in an apparently contemptuous and sneering manner, that he never believed a real estate man until he, the defendant, had him in writing. Early in the charge the trial judge cautioned the jury that, in considering the case, they should confine themselves to the material evidence, as they recalled it, and to the law, as given them by the court, that they should put aside from their consideration all matters extraneous to that law and evidence and that they should not permit themselves to be influenced, in any degree whatsoever, by any statement made in their presence which might have a tendency to create in their minds the impression that all real estate men were unworthy of belief. It is contended by counsel for the defendant that in this effort to correct the statement of his client the trial judge magnified the remarks of the defendant and greatly prejudiced the jury against him. As a matter of fact, the only effect, if any, of what the trial judge said could have been to remove from the minds of the jury any ill-will or feeling which the unfortunate words and manner of the defendant might have aroused or stirred up towards or against real estate men, of whom just one-half of the witnesses for the defendant, exclusive of himself, consisted.

In the eleventh reason, it is said that it was also error for the court to charge the jury that if vendors were permitted to employ brokers to look up purchasers and to call the attention of buyers to the property which they desired to sell, limiting their agents as to the terms of sale and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, the services and the expenses of the broker in

bringing the property into the market and accomplish the sale by an abatement in the price and then refuse to pay the broker anything, the business of a broker would not be worth pursuing, a gross injustice would be done, every unfair and illiberal vendor would limit his property at a price slightly above the market and make use of the broker to bring it into notice and then make his own terms with the buyers, who, in reality, were procured by the efforts of the agent. This statement by the trial judge was, substantially, in the very words used by Mr. Justice SHARSWOOD, in Keys v. Johnson, 68 Pa. 44 (1871).

The eleventh, twelfth, thirteenth and fourteenth reasons each claim error in that part of the charge which had especial reference to the alleged termination of the agency to sell, an agency admittedly given by the defendant to the plaintiff, or, at least, not seriously disputed by the former.

In the first of these four reasons, it is said that the trial judge erroneously told the jury that, if a broker has commenced a negotiation with a purchaser, the owner cannot, while such negotiation is pending, take it into his own hands and complete it, either at or below the price first limited and then refuse to pay the commission. The authority for the rule of law thus stated is Peters v. Holmes, appellant, 45 Pa. Superior Ct. 278, (1911), HENDERSON, J.

The twelfth reason is because the trial judge charged: If the terms of employment merely require the broker to find or introduce a purchase within a certain time, he is legally entitled to remuneration if he induces the person to begin negotiations with his employer before the expiration of the period named, even though such negotiations do not materialize until after the time limit is reached. The sentence to which objection is made is the identical language employed by Mr. Justice SADLER, in Bossart v. Erie Coal Mining Co., appel., 276 Pa. 67,

443, (1925).]        Opinion of the Court below.

(1923), one of the cases cited in the brief of counsel for the defendant.

The thirteenth and fourteenth reasons are not impressive. The excerpts from the charge claimed to have been erroneous, when taken together with the other parts of the charge relating to the revocation of the concededly existing agency of the plaintiff to sell the property of the defendant, show that the applicable principles of law were stated along the lines approved by the Superior Court in Peters v. Holmes, supra. Whether the revocation of the agency of the plaintiff was made in good faith by the defendant or was a mere subterfuge on his part to relieve himself of the payment of a commission to the plaintiff was an open question at the trial and was for the jury: Kelly v. Marshall et al., Appellants, 172 Pa. 399, (1896), FELL, J.

The seventh reason asserts that the trial judge erred in refusing to withdraw a juror after counsel for the plaintiff, during the taking of testimony, had said "Now, apparently, we are trying a totally different case, which, it may be of interest to your honor to know, has already been tried in Philadelphia." It is urged by the defendant that the words quoted led the jury to take the meaning that the case on trial had already been tried in Philadelphia and that, in addition, the remark of counsel carried with it the inference that the case had been decided adversely to the defendant. In the first place, counsel spoke of "a totally different case" and, in the second place, nothing was said as to the outcome of that other case. Furthermore, the counsel who uttered the words objected to by the defendant was quick to state, in the hearing of the jury, that the case on trial had never before been tried and that his remark had not been made with reference to the case on trial. Moreover, the trial judge, in his charge, was careful to admonish the jury to dismiss from their minds anything that, unfortunately, might have crept into the case concerning a suit by one of the witnesses for the plaintiff against

one of the witnesses for the defendant arising out of a circumstance connected only collaterally with the issue being tried.

The fourth and fifth reasons why a new trial should be granted are, in condensed form, that the members of the jury were out such a short time that they could not have fully considered the case before rendering their verdict. In point of fact, the record shows that the jury was out sixteen minutes and not less than ten, as stated in the fourth reason. Taking into consideration, in addition to the nature of the testimony adduced, the appearance and manner of the witnesses, we are not pre-pared to say that sixteen minutes was too short a time in which the jury could have reached a proper verdict. If the jury believed the plaintiff and the witnesses called by him, and if they were impressed by the testimony of the eager, frank, graphic and picturesque DeMay—a witness for the defendant—who certainly gave, with plenty of punch, much testimony from which inferences favorable to the contentions of the plaintiff might have been fairly drawn, then the triers of the case could rea-sonably have reached the conclusion to which they came in a space of time shorter than that actually consumed by them. Bearing in mind that the last thing the trial judge said to the jury before retirement was that the case was an important one to both sides and that, despite the fact that it was late in the afternoon of Friday, they, the members of the jury, were not to permit themselves to be hurried in giving the case all the care and atten-tion required, we cannot assume that twelve jurors failed in the performance of sworn duty.

Unconvinced, after long and careful consideration, that—as set forth in the first, second, third, tenth and sixth reasons, respectively—the verdict was against the law, the evidence and the weight of the latter, that the members of the jury were erroneously told that, in reach-ing a proper conclusion, as they found the facts, they might properly inquire whether a sale to DeMay would

ever have been made without the services of the plaintiff and that it was error to refuse the point for binding instructions submitted by the defendant, we shall not permit the motion for a new trail to prevail.

So far as the motion for judgment n. o. v. is concerned, the general correctness of the many propositions of law marshalled by counsel for the defendant in support of his contention that the plaintiff is not entitled to recover may not be gain said. Among the legal principles upon which he relies are: that, to be entitled to a commission, a broker must accomplish the object of his employment and, if he fails to do so, no matter how great his efforts, or how meritorious his services, he cannot recover; that a broker must act strictly according to the authority conferred upon him by his principal, unless a strict performance of the conditions of the contract be waived, or prevented by the principal, without fault of the agent; that a broker employed to buy, sell or exchange property may be engaged on such terms that he is not entitled to compensation until a contract of purchase, sale or exchange has been made, or even until title has been transferred; that the negotiations begun by a broker must continue without interruption and he must be actively instrumental in causing the parties to consummate the transaction; that, where a broker is the procuring cause of the transaction, he is entitled to his commissions, although the transaction be on different terms and through a second broker, but that, where a broker fails to secure a purchaser and another broker intervenes and sells the property on different terms, although to the customer of the first broker, the latter is not entitled to a commission; that, where the parties stipulate that an agency to sell property is limited to a definite period, it terminates at the expiration of that time, unless the broker has found a purchaser, able, ready and willing to buy the property within the time specified; that, unless the broker completes the object of his employment he is not entitled to a commission;

and that a broker cannot recover where a sale is not made within a definite period, as provided by the contract, and is, subsequently, accomplished.

The difficulty confronting counsel for the defendant is not so much that his legal premise is unsound, or still more that the facts of his own side of the case are not all encompassed by his supposition, as it is that too many facts on the other side of the case are entirely without and beyond the application of the rules of law he invokes. In other words, his conception as to the legal doctrines involved by the whole testimony is entirely too restricted. His argument, while conceding the employment of the plaintiff, takes for granted that the latter failed to accomplish the object of his employment, that the plaintiff did not act strictly in accordance with the authority conferred upon him by the defendant, that no contract of sale was entered into by and between the defendant and DeMay, that the negotiations commenced by the plaintiff were not uninterruptedly continued, that the plaintiff was not actively instrumental, throughout the negotiations, in causing the defendant and De-May to consummate the transaction, that the plaintiff failed to secure DeMay as a purchaser, that Redding & Son intervened and sold the property on different terms to DeMay and that the defendant had stipulated that the agency of the plaintiff to sell the property should be limited to a definite period.

Such of the above assumptions of fact as are not either inconsistent with each other, or, at the trial, were without supporting evidence on the party of the defendant, were, then and there, controverted by the plaintiff and his witnesses.

The whole contention of the plaintiff was, and the testimony on his side of the case went to demonstrate, that he did effect the purpose for which he had been employed, that he did act strictly in accord with the authority he had received from the defendant, that his negotiations did last without break, that he and no other

was the active instrument in the consummation of the sale, that he did not fail to secure a purchaser, that the case presented was not that of an intervening broker selling the property on new terms but that the plaintiff alone had been the moving and proximate cause of the sale and that the defendant had not stipulated that the agency to sell given to the plaintiff was to be limited in time.

If there be a conflict in the testimony as to whether the broker, having brought the parties together, abandoned the sale to the person introduced, or whether the transaction was completed without a break in the negotiations, the disputed question is one for the jury: Peters v. Holmes and Bossart v. Erie Coal Mining Co., supra.

If the jury believed the evidence offered on behalf of the plaintiff, then, he made out a good case and was entitled to recover and the motion for judgment n. o. v. must go the way of the motion for a new trial.

And now, this twenty-first day of January, 1924, the motions for a new trial and judgment non obstante veredicto are both overruled, all the reasons in support of each are dismissed and the prothonotary is directed, upon payment of the verdict fee, to enter judgment on the verdict in favor of the plaintiff and against the defendant.

Verdict for plaintiff in the sum of $2,500, and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court and refusal of defendant's motion for judgment non obstante veredicto.

*Albert T. Bauerle,* for appellant.—The property was not sold through the efforts of the plaintiff, and he was not entitled to a commission: Barber v. Miller, 41 Pa. Superior Ct. 442; Kellogg v. Conklin, 6 Phila. 177; Stevenson v. Bannan, 227 Pa. 498; Turner v. Baker, 225 Pa. 359; Pierce v. Truitt, 12 Atlantic 661; Michener v.

454      WALKER v. RANDAL, Appellant.

Arguments—Opinion of the Court. [85 Pa. Superior Ct. Beirn, 9 County 637; Brennan v. Perry, 7 Phila. 242; Pratt v. Patterson, 7 Phila. 135; Speer v. Benedum-Trees Oil Co., 239 Pa. 180; Yerkes v. Osborne, 42 Pa. Superior Ct. 253.

*Clarence Hall,* of *Orr & Hall,* and with him *C. Townley Larzelere,* for appellee.—The case was for a jury as to whether or not the plaintiff had earned his commission: Allen v. Line, 11 Sup. 517; Braunchweiger v. Waits, 179 Pa. 47; Fullman v. Rose, 160 Pa. 47; Platz v. McKean Township, 178 Pa. 601; Earp v. Cummins, 54 Pa. 394; Kiefer v. Yoder, 198 Pa. 308.

PER CURIAM, February 27, 1925:

The plaintiff recovered a verdict of $2,500. After argument, a new trial was refused and judgment entered against the defendant. In an opinion filed by the trial judge, every pertinent question is reviewed and disposed of. Under the authorities cited, we see no reason for disturbing the verdict.

The judgment is affirmed.